**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**

| | | |
|---|---|---|
| **GARRETT T. ELLIS,** | * | |
| **Plaintiff,** | * | |
| **v.** | * | **Civil No. SAG-26-02176** |
| **LIFEBRIDGE HEALTH, INC., *et al.*,** | * | |
| **Defendants.** | * | |

* * * * * * * * * * * * *

## MEMORANDUM OPINION

Plaintiff Garrett T. Ellis ("Plaintiff"), who is self-represented, filed a First Amended Complaint ("FAC"), asserting claims under the Americans with Disabilities Act ("ADA") and the Maryland Fair Employment Practices Act ("MFEPA") against his former employer, Sinai Hospital of Baltimore, Inc. ("Sinai") and its parent company, Lifebridge Health, Inc. (collectively, "Defendants").[1] ECF 16. Defendants have filed a motion to dismiss, ECF 19, Plaintiff filed an opposition, ECF 25, and Defendants filed a reply, ECF 26. This Court has reviewed the filings and no hearing is necessary. *See* Loc. R. 105.6 (D. Md. 2025). For the reasons that follow, the motion will be granted in part and denied in part and the dismissed claims will be dismissed without prejudice.

[1] Plaintiff's suit against Sinai's parent company must be dismissed. Under Maryland law, a parent corporation is generally not liable for the wrongful acts of its subsidiary. "Maryland courts will pierce the corporate veil only where it is necessary to prevent fraud or enforce a paramount equity." *Ramlall v. MobilePro Corp.*, 30 A.3d 1003, 1010 (Md. Ct. Spec. App. 2011) (declining to hold a parent company liable for breach of contract by its subsidiary (citing *Bart Arconti & Sons v. Ames-Ennis, Inc.*, 340 A.2d 225 (Md. 1975))). LifeBridge Health should not be named in any amended complaint filed in this case.

## I. FACTUAL BACKGROUND

The following facts relevant to this motion are derived from the FAC, ECF 16, and are assumed to be true for the purposes of adjudicating this motion. Plaintiff worked as an Emergency Department nurse at Sinai Hospital on a PRN (as-needed) basis. *Id.* ¶ 2. On or about March 10, 2025, Plaintiff received a phone call that he had been marked as terminated in Sinai's system for failure to meet PRN scheduling requirements. *Id.* ¶ 8. Because the letter notices regarding the issue had been mailed to an improper address, Sinai reversed the determination and Plaintiff's employment continued with no break in service. *Id.*

Plaintiff has "a qualifying disability under the ADA and the MFEPA that impacts, among other major life activities, task execution, communication, and the ability to meet certain deadline-related functions." *Id.* ¶ 9. Plaintiff alleges that he "verbally disclosed this condition to his direct manager at the time" before he made an ADA request. *Id.* ¶ 10. On July 29, 2025, Plaintiff made a formal written request for reasonable accommodation under the ADA, "formally initiating the interactive process and offering to provide supporting medical documentation upon request." *Id.* ¶ 11. He simultaneously requested leave eligibility under the Family and Medical Leave Act ("FMLA"). *Id.* ¶ 12.

Several days later, on August 2, 2025, the Human Resources Operations Manager issued a written corrective action communication to Plaintiff stating that he had only worked 3.38 hours since May 1, 2025 against a 40-hour PRN minimum. *Id.* ¶ 13. The letter stated that Plaintiff's employment would be terminated if this was not cured within the month. *Id.* Plaintiff had received a separate written communication from Human Resources on May 23, 2025, stating that PRN staff are required to work 36 hours in a six-week period, not 40. *Id.* ¶ 14.

On August 4, 2025, Plaintiff responded in writing, disputing the 40-hour PRN requirement and "formally noting that any adverse action taken while his ADA accommodation request and

FMLA claim remained pending and unresolved could constitute unlawful retaliation and interference." *Id.* ¶ 15. On August 6, 2025, Sinai issued Plaintiff a formal termination letter, citing the forty-hour requirement for PRN staff. *Id.* ¶ 17. Plaintiff filed a charge with the EEOC and, eventually, this lawsuit. *Id.* ¶ 20.

## II. LEGAL STANDARDS

Defendants seek dismissal pursuant to Rule 12(b)(6). That standard presumes the facts alleged by a plaintiff to be true, then assesses whether the complaint still fails as a matter of law "to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). In reviewing a Rule 12(b)(6) motion, a court "must accept as true all of the factual allegations contained in the complaint" and must "draw all reasonable inferences [from those facts] in favor of the plaintiff." *E.I. du Pont de Nemours & Co. v. Kolon Indus., Inc.*, 637 F.3d 435, 440 (4th Cir. 2011) (citations omitted); *Houck v. Substitute Tr. Servs., Inc.*, 791 F.3d 473, 484 (4th Cir. 2015). But if a complaint provides no more than "labels and conclusions" or "a formulaic recitation of the elements of a cause of action," it is insufficient. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Instead, a complaint must allege "a plausible claim for relief." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009). Plausibility requires the plaintiff to plead "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 678.

Because Plaintiff is self-represented, his pleadings are "liberally construed" and "held to less stringent standards than [those filed] by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (per curiam) (quoting *Estelle v. Gamble*, 429 U.S. 97, 106 (1976)). "However, liberal construction does not absolve Plaintiff from pleading a plausible claim." *Bey v. Shapiro Brown & Alt, LLP*, 997 F. Supp. 2d 310, 314 (D. Md. 2014), *aff'd*, 584 F. App'x 135 (4th Cir. 2014); *see also Coulibaly v. J.P. Morgan Chase Bank, N.A.*, Civ. No. DKC-10-3517, 2011 WL 3476994, at *6 (D. Md. Aug.

8, 2011) ("[E]ven when pro se litigants are involved, the court cannot ignore a clear failure to allege facts that support a viable claim."), *aff'd*, 526 F. App'x 255 (4th Cir. 2013).

Moreover, a federal court may not act as an advocate for a self-represented litigant. *See Brock v. Carroll*, 107 F.3d 241, 242–43 (4th Cir. 1997) (Luttig, J., concurring in judgment); *Weller v. Dep't of Soc. Servs.*, 901 F.2d 387, 391 (4th Cir. 1990). Therefore, the court cannot "conjure up questions never squarely presented," or fashion claims for a self-represented plaintiff. *Beaudett v. City of Hampton*, 775 F.2d 1274, 1278 (4th Cir. 1985); *see also M.D. v. Sch. Bd. of Richmond*, 560 F. App'x 199, 203 n.4 (4th Cir. 2014) (unpublished) (rejecting self-represented plaintiff's argument that district court erred in failing to consider an Equal Protection claim, because plaintiff failed to allege it in the complaint).

## III. ANALYSIS

In its two counts, Plaintiff's FAC asserts three distinct claims pursuant to the ADA and the MFEPA. "Consistent with prevailing legal authority, the Court will jointly evaluate the analogous ADA and MFEPA discrimination claims under the standards applicable to claims under the ADA." *Gagnon v. Bd. of Educ. of Montgomery Cnty.*, Civ. No. 23-2359-TDC, 2026 WL 1584459, at *4 (D. Md. June 3, 2026) (citing *Peninsula Reg'l Med. Ctr. v. Adkins*, 137 A.3d 211, 214, 220, 223–24 (Md. 2016) and *Taylor v. Giant of Md., LLC*, 33 A.3d 445, 459 (Md. 2011)). This Court will therefore address the two statutes in tandem and will address the three types of ADA/MFEPA claims in turn.

### A. Failure to Accommodate

A prima facie case for failure to accommodate requires a plaintiff to show: "(1) that he was an individual who had a disability within the meaning of the statute; (2) that the employer had notice of his disability; (3) that with reasonable accommodation he could perform the essential functions of the position; and (4) that the employer refused to make such accommodations." *Wilson*

*v. Dollar Gen. Corp.*, 717 F.3d 337, 345 (4th Cir. 2013) (brackets and ellipsis omitted). To successfully demonstrate that an employer has violated the ADA by failing to accommodate a qualifying disability, the plaintiff bears the burden of "identifying a reasonable accommodation that would have permitted [him] to satisfy the essential functions of [his] job." *Collins v. Vernadero Grp.*, Civ. No. 3:18-636, 2019 WL 2718495, at *6 (E.D. Va. June 28, 2019) (citing *Halpern v. Wake Forest Univ. Health Scis.*, 669 F.3d 454, 464–65 (4th Cir. 2012)). "Relevant here, reasonable accommodation claims may fail where the plaintiff fails to sufficiently plead 'that she could perform perhaps the most essential function of all—regularly showing up to work—with or without reasonable accommodations from defendant.'" *Collins*, 2019 WL 2718495, at *6 (quoting *Vanyan v. Hagel*, 9 F. Supp. 3d 629, 638 (E.D. Va. 2014)).

While Plaintiff is correct that an employee need not identify the final, precise accommodation in his initial request to his employer, in order to state a plausible claim, he must plead facts plausibly suggesting "that with reasonable accommodation he could perform the essential functions of the position." *See Wilson*, 717 F.3d at 345. Plaintiff's FAC does not identify the nature of Plaintiff's disability, the effects his disability had on his ability to perform the essential functions of his job successfully, or what reasonable accommodation might make him able to perform the essential functions of his position. Given the sparse facts contained in the FAC, this Court is unable to find that it plausibly states a claim that Sinai failed to reasonably accommodate Plaintiff's disability.

**B. Disability Discrimination/Disparate Treatment**

The lack of pleaded facts similarly undermines Plaintiff's claim of disability-based discrimination. Initially, as noted above, the FAC is devoid of facts establishing a qualified disability, which has to substantially limit a major life activity. *See* 42 U.S.C. § 12102(1)(A).

Plaintiff alleges an unspecified "qualifying disability" that "impacts" the major life activity of "communication." ECF 16 at ¶ 9. But he does not allege that his ability to communicate is "substantially limited," nor does he provide the required supporting facts to allow this Court to evaluate whether such an allegation is plausible.

Even had a qualifying disability been sufficiently alleged, Plaintiff's discrimination claim would merit dismissal. He alleges no facts constituting direct evidence of intentional discrimination, such as comments made by the decisionmaker suggesting animus relating to his disability. He also fails to plead factual allegations that could give rise to an inference of discrimination. Plaintiffs can establish an inference of racial discrimination using the *McDonnell Douglas* burden-shifting scheme. *See McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973).

The *McDonnell Douglas* standard begins with a prima facie case, where a plaintiff must show (1) membership in a protected class; (2) an adverse employment action; (3) satisfactory job performance at the time of the adverse action; and (4) "the adverse action occurred under circumstances that raise a reasonable inference of unlawful discrimination[.]" *Sempowich v. Tactile Sys. Tech., Inc.*, 19 F.4th 643, 649–50 (4th Cir. 2021). While a plaintiff need not plead facts supporting each element of a prima facie case in his complaint to survive a motion to dismiss, he must plead sufficient facts to establish a plausible discrimination claim to meet the *Twombly* standard. *See Coleman v. Md. Court of Appeals*, 626 F.3d 187, 190 (4th Cir.2010) ("[W]hile a plaintiff is not required to plead facts that constitute a prima facie case in order to survive a motion to dismiss, '[f]actual allegations must be enough to raise a right to relief above the speculative level'" (citation omitted) (quoting *Twombly*, 550 U.S. at 555)).

Here, Plaintiff has failed to plead facts supporting a plausible discrimination claim. He has not offered any evidence that he received different treatment from similarly situated employees outside his protected class. He offers no facts establishing that his job performance was satisfactory or suggesting that other, non-disabled employees have been permitted to retain employment after failing to meet the PRN-hour threshold or after working a similar number of hours in a six-week window. Such allegations would typically include a comparator who "dealt with the same supervisor, [was] subject to the same standards and . . . engaged in the same conduct without such differentiating or mitigating circumstances that would distinguish their conduct or the employer's treatment of them for it." *Haywood v. Locke*, 387 Fed. App'x 355, 359 (4th Cir. 2010) (per curiam) (quoting *Mitchell v. Toledo Hosp.*, 964 F.2d 577, 583 (6th Cir. 1992)). Absent such (or similar) allegations, Plaintiff has not plausibly pleaded that his termination was premised on disability discrimination and that claim is also subject to dismissal.

**C. Retaliation**

Plaintiff's claim of ADA/MFEPA retaliation meets with more success, at least at the low bar of the pleading stage. As summarized by the Fourth Circuit, the ADA retaliation standard is as follows:

> Under 42 U.S.C. § 12203, "[n]o person shall discriminate against any individual because such individual has opposed any act or practice *made unlawful by this chapter* or because such individual made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this chapter." (emphasis added). In order to establish a prima facie case of retaliation, a plaintiff must allege (1) that she has engaged in conduct protected by the ADA; (2) that she suffered an adverse action subsequent to engaging in the protected conduct; and (3) that there was a causal link between the protected activity and the adverse action. *Rhoads v. FDIC*, 257 F.3d 373, 392 (4th Cir. 2001). In reviewing retaliation claims, courts recognize the need to balance the desire to encourage employees to oppose unlawful discrimination, with "an employer's interest in maintaining a harmonious, productive and loyal workforce." *Fitch v. Solipsys Corp.*, 94 F. Supp. 2d 670, 678 (D. Md. 2000).

*Freilich v. Upper Chesapeake Health, Inc.*, 313 F.3d 205, 216 (4th Cir. 2002). The ADA does not require proof of disability to mount a retaliation claim, so the Court's conclusion that Plaintiff has failed to allege a qualifying disability is not dispositive as to this count. *Rhoads*, 257 F.3d at 380. Indeed, Plaintiff does not even have to "prove the conduct he opposed was actually an ADA violation. Rather, he must show he had a 'good faith belief' the conduct violated the ADA." *Reynolds v. Am. Nat. Red Cross*, 701 F.3d 143, 154 (4th Cir. 2012) (quoting *Freilich*, 313 F.3d at 216).

Defendants contend that the FAC fails to plead a causal connection between Plaintiff's alleged protected activity and his termination. ECF 19 at 13–14. They argue that Sinai's original attempt to terminate Plaintiff in March, 2025 for failure to meet the PRN scheduling requirements predated his protected activity in July and August, 2025, thus demonstrating that the protected activity did not cause his eventual termination. *Id.* While that may be a compelling fact to defuse an eventual suggestion that Sinai's non-discriminatory reason for his termination was pretextual, it does not, at this early stage, overcome Plaintiff's assertion that the close temporal proximity (of just a few days) between Plaintiff's written ADA request and his assertion of ADA rights and his termination plausibly suggests causation. Defendants' motion to dismiss Plaintiff's ADA/MFEPA retaliation claim, then, will be denied.[2]

Finally, the caption of Plaintiff's retaliation claim references Title VII. ECF 16 at 7. Plaintiff has not alleged membership in any class protected by Title VII and has only asserted

---

[2] Defendants also suggest that Plaintiff's FAC "concedes that between May 1, 2025 and August 2, 2025 – a period of 13 weeks – he only worked 3.38 hours." ECF 19 at 14. While that fact, if proven true, will make Plaintiff's litigating position quite difficult, this Court disagrees that he "concedes" that fact in his FAC. The cited paragraph simply alleges that Sinai's Human Resources Operations Manager issued a written communication "stating that he had worked only 3.38 hours since May 1, 2025." ECF 16 ¶ 13. It is true that Plaintiff alleges no facts countering the Operations Manager's claim, but he is not required to do so in his complaint.

claims relating to his alleged disability. He also did not make any Title VII-related arguments in his opposition to the motion to dismiss. ECF 25. Accordingly, any Title VII claim must be dismissed.

## IV. CONCLUSION

For these reasons, Defendants' Motion to Dismiss, ECF 19, will be granted as to all claims against LifeBridge Health and as to Plaintiff's ADA/MFEPA disability discrimination and failure to accommodate claims, along with any Title VII claims, and denied as to his claim for ADA/MFEPA retaliation. This Court will afford Plaintiff one final opportunity to amend his complaint to state the dismissed claims. Plaintiff is afforded thirty days' leave to file a second amended complaint and is cautioned that he should include all of the facts relevant to the claims he asserts.

Dated: November 12, 2026

/s/
Stephanie A. Gallagher
United States District Judge